**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-2143**

---

THE COURTLAND COMPANY, INC., a West Virginia Business Corporation,

Plaintiff - Appellant,

v.

UNION CARBIDE CORPORATION, a New York Corporation,

Defendant - Appellee,

and

DOW CHEMICAL COMPANY, INC., a Delaware Corporation,

Defendant.

---

**No. 23-2144**

---

THE COURTLAND COMPANY, INC., a West Virginia Business Corporation,

Plaintiff - Appellant,

v.

UNION CARBIDE CORPORATION, a New York Corporation,

Defendant - Appellee.

---

**No. 24-2077**

---

THE COURTLAND COMPANY, INC., a West Virginia Business Corporation,

Plaintiff - Appellant,

v.

UNION CARBIDE CORPORATION, a New York Corporation,

Defendant - Appellee.

---

**No. 24-2078**

---

THE COURTLAND COMPANY, INC., a West Virginia Business Corporation,

Plaintiff - Appellant,

v.

UNION CARBIDE CORPORATION, a New York Corporation,

Defendant - Appellee.

---

Appeals from the United States District Court for the Southern District of West Virginia, at Charleston.  John T. Copenhaver, Jr., Senior District Judge.  (2:18-cv-01230, 2:21-cv-00101, 2:19-cv-00894, 2:21-cv-00487)

---

Argued:  September 11, 2025                                   Decided:  October 6, 2025

---

Before NIEMEYER, AGEE, and RICHARDSON, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

2

Nos. 23-2143/2144. **ARGUED:** Michael O. Callaghan, NEELY & CALLAGHAN, Charleston, West Virginia, for Appellant. Daniel A. Leister, LEWIS BRISBOIS BISGAARD & SMITH LLP, Cleveland, Ohio, for Appellee. **ON BRIEF:** Michael C. Donovan, LAW OFFICES OF MICHAEL C. DONOVAN, Mountain View, California; John R. Till, Kirk M. Tracy, PALADIN LAW GROUP, LLP, Walnut Creek, California, for Appellant. R. Scott Masterson, Patricia M. Bello, Charleston, West Virginia, Martin A. Shelton, LEWIS BRISBOIS BISGAARD & SMITH LLP, Atlanta, Georgia, for Appellee.

Nos. 24-2077/2078. **ARGUED:** Michael Craig Donovan, LAW OFFICES OF MICHAEL C. DONOVAN, Mountain View, California, for Appellant. Martin Arthur Shelton, Atlanta, Georgia, Patricia M. Bello, LEWIS BRISBOIS BISGAARD & SMITH, Charleston, West Virginia, for Appellee. **ON BRIEF:** Michael O. Callaghan, NEELY & CALLAGHAN, Charleston, West Virginia; John R. Till, Kirk M. Tracy, PALADIN LAW GROUP, LLP, Walnut Creek, California, for Appellant. R. Scott Masterson, Charleston, West Virginia, Daniel A. Leister, LEWIS BRISBOIS BISGAARD & SMITH LLP, Cleveland, Ohio, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

3

PER CURIAM:

The Courtland Company, Inc., a West Virginia corporation, commenced four separate actions against Union Carbide Corporation, a New York corporation, contending generally that Union Carbide conducted activities on its properties in South Charleston, West Virginia, that polluted the groundwater and surface water on the contiguous property of Courtland. Indeed, for years, Union Carbide had disposed of toxic waste into landfills on its properties, contaminating both ground and surface water. But likewise, Courtland had, for years, used its 13.8 acre parcel for various industrial activities, which likewise polluted the groundwater and surface water on its property. Indeed, in the second action commenced by Courtland, Union Carbide filed a counterclaim for response costs in respect to pollution on Courtland's parcel and for allocation of Courtland's costs.

More particularly, Courtland owned a 13.8 acre triangular parcel (the Courtland Property) that was used as a storage, staging, and waste site for various industrial activities. To the south of its property and contiguous to it, Union Carbide owned a 574-acre parcel, its Technical Center, on which it had for years dumped toxic wastes (the "Tech Park" site). The Tech Park site was generally upgradient from the Courtland Property, as water generally flowed northward into drainage ditches and streams, ending in the Kanawha River further north. To the northeast of the Courtland Property was an additional Union Carbide parcel, on which were the Filmont dump and the Massey Railyard (the Filmont/Massey Property). Both sites also had toxic wastes on them. Courtland filed suit against Union Carbide under federal environmental laws and related state law for its

4

releases and threatened releases of toxic wastes and polluted groundwater, surface water, and stormwater. The layout of the parcels are shown in the following trial exhibit:



Generally, the four actions filed by Courtland address (1) releases and threatened releases of contaminants from the Tech Park, in violation of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) and the Resource Conservation and Recovery Act (RCRA) and state law, and the parties and the district court have denominated this action as "Courtland I"; (2) releases and threatened releases of contaminants from the Filmont/Massey Property, in violation of the same laws, "Courtland II"; (3) discharges of polluted water into drainage ditches on the north edge of the Filmont/Massey Property, in violation of the Clean Water Act, "Courtland III"; and

5

(4) discharges of polluted water into a drainage ditch on the boundary between the south edge of the Filmont/Massey Property and the north edge of the Courtland Property, in violation of the Clean Water Act, "Courtland IV".

The district court consolidated the four actions and tried them in two phases. Phase I was conducted to determine all liability issues, and Phase II, all remedy issues. After an 18-day bench trial on Phase I, the district court issued a 416-page opinion making thorough and detailed findings of fact and conclusions of law on liability. Then, after a 3-day bench trial on Phase II, the court issued a 79-page opinion, again making thorough and detailed findings of fact and conclusions of law on remedies. In the end, the court ruled in favor of each party in part. From the district court's judgments, Courtland filed these appeals.

After reviewing the district court's rulings, the briefs and arguments of counsel, and the extensive joint appendices, which consisted of over 9,000 pages, we affirm the judgments of the district court substantially for the reasons given by the district court.

I

In the first action that Courtland filed, Courtland I, Courtland alleged that contaminated water from Union Carbide's Technical Center or "Tech Park" Property migrated to the Courtland Property, contaminating the groundwater there. In Count I, Courtland sought recovery of response costs in the amount of $36,916.25 and a declaratory judgment under CERCLA, 42 U.S.C. §§ 9607(a) and 9613(g), and in Count II, it sought citizen-suit relief under RCRA, 42 U.S.C. § 6972(a)(1)(A). In the remaining counts, it sought declaratory and injunctive relief under state law.

The district court found as fact that groundwater from Union Carbide's Tech Park Property was not the source of Courtland Property's groundwater contamination, citing the groundwater flow systems between the two properties, its bedrock structure, and the testimony of Union Carbide's expert, whom it credited. Thus, the court denied all relief, including relief under Courtland's parallel state statutory claim.

In particular, with respect to Courtland's claim for recovery of response costs, the court agreed with Courtland that it satisfied the criteria of 42 U.S.C. § 9607(a) to qualify for such costs. The court stated:

> The court thus concludes that the $36,916.25 Courtland has incurred as a result of Dr. Simonton's August 2017 preliminary investigation of the Courtland Property groundwater constitute necessary costs of response that are consistent with the [National Contingency Plan].
>
> *      *      *
>
> Indeed, such costs were incurred in direct response to Courtland's concern that contaminants from Tech Park were migrating to the Courtland Property groundwater and were thus a "necessary" prerequisite to enable any potential "subsequent measures to ensure a CERCLA-quality cleanup, as CERCLA and the [National Contingency Plan] both contemplate.

But the court then turned to Union Carbide's defense mounted under § 9607(b), which provides a causation defense on which Union Carbide bore the burden of proof. To avoid liability for response costs, Union Carbide would have to show, among other things, that the release or threatened release of a hazardous substance was caused by "the act or omission of a third party." 42 U.S.C. § 9607(b)(3). Consistent with its factual findings on Courtland I, the court found that Union Carbide carried its burden, stating:

> Nevertheless, consistent with the findings and credibility determinations made with respect to the opinions of Mr. de Haven and Dr. Simonton set

7

forth in Section II.I. at pages 40–50 herein, and in viewing the entirety of the evidentiary record, the court concludes that [Union Carbide] has demonstrated, by a preponderance of the evidence, that Tech Park is not the source of the constituents detected in Courtland's groundwater.

*See also Westfarm Assocs. Ltd. P'ship. v. Washington Suburban Sanitary Comm'n*, 66 F.3d 669, 681–82 (4th Cir. 1995). Having found that Union Carbide successfully proved its defense, the court rejected Courtland's CERCLA claim for response costs of $36,916.25.

With respect to the remaining counts alleged in Courtland I, the district court dismissed some and Courtland voluntarily dismissed the others. These others, however, give rise to no additional issues before us.

On appeal, Courtland argues that the district court should have awarded it response costs simply on the basis that it satisfied the statutory terms of § 9607(a). In making that argument, however, it focused *only on* § 9607(a), an argument with which the district court agreed. But Courtland failed to address why the court erred in finding that Union Carbide proved its causation defense under § 9607(b).

In sum, we conclude that the district court's findings of fact were supported by the evidence and that therefore its denial of response costs was not erroneous. Based on the same facts, the court also did not err in denying Courtland the relief it requested under the RCRA and the parallel state statute.

II

In the second action, Courtland II, Courtland alleged — again in a multicount complaint — that contaminated water migrated to the Courtland Property from Union Carbide's Filmont/Massey Property located to the northeast of the Courtland Property.

8

Courtland again asserted claims under the CERCLA, the RCRA, and state law. Under CERCLA, Courtland again sought recovery of its response costs in the amount of $7,802.50 for a kayak inspection trip by its expert and the amount of $27,142.50 for a preliminary groundwater investigation, as well as declaratory and injunctive relief.

Union Carbide filed a counterclaim under CERCLA, claiming response costs of $199,942.52 for its investigatory borings conducted on the Courtland Property. It also claimed contribution from Courtland to allocate any response costs that Courtland might obtain, relying on 42 U.S.C. § 9613(f)(1) (authorizing the equitable allocation of response costs).

The district court found that Union Carbide was liable to Courtland under CERCLA and awarded Courtland $27,142.50 in recovery costs. But, it denied Courtland's claim for $7,802.50 in costs that Courtland claimed for a kayak inspection trip by its expert, finding that it was irrelevant to Courtland's CERCLA claim and therefore not a "necessary" response cost, as required by CERCLA. *See* 42 U.S.C. § 9607(a). The court also found that Union Carbide was liable to Courtland under the RCRA because its Filmont site was an open dump. On Courtland's request for injunctive relief, however, the court concluded that Courtland had failed to show irreparable harm and denied that relief. The court dismissed Courtland's remaining claims, which alleged generally public nuisance and negligence.

On Union Carbide's counterclaim, the court denied its request for response costs of $199,942.52, but it granted Union Carbide contribution of 25% — $6,785.63 — in respect

to Courtland's response costs. It concluded that 25% was a fair amount for Courtland to bear in view of its own activities that contaminated its own property.

On appeal, Courtland challenges the district court's ruling (1) denying reimbursement for the kayak trip; (2) granting Union Carbide contribution of 25%; (3) denying its request for injunctive relief, and (4) dismissing its public nuisance claims.

Again, the district court's rulings were based on its findings of fact, which Courtland has not shown to be clearly erroneous. With respect to the rejection of the kayak costs, the district court reasoned that the investigative activities, which consisted of surface water and sediment sampling "significantly downstream" (north) of the Courtland Property, were too attenuated from the groundwater migration concern that animated Courtland's CERCLA claim. It concluded, therefore, that the kayak trip expenses were not a "necessary" response cost under CERCLA. We conclude that the district court's finding that the costs incurred in investigating hazardous releases downstream from Courtland's property and in non-adjacent waterways were not a "necessary" response cost was neither clearly erroneous nor error.

With respect to contribution, the district court found that "both historic uses of and ongoing industrial operations at the Courtland Property [were] contributing sources to its groundwater contamination" and that Courtland's contribution to the contamination provided a solid basis to equitably allocate costs. Again, we cannot find that the district court clearly erred in its findings of fact or abused its discretion in making the equitable allocation.

10

With respect to the district court's denial of injunctive relief under the RCRA, the district court found that Courtland had failed to demonstrate irreparable injury. It concluded, as a factual matter, that the risks posed by groundwater contamination from the Filmont site were most limited as (1) there were no known groundwater wells within a mile of the Filmont site, (2) there was no evidence that contaminated groundwater from Filmont could reach residential areas, (3) the area encompassing the Filmont and Courtland sites was subject to an ordinance prohibiting the use of untreated groundwater, and (4) no one on either the Filmont site or the Courtland Property was utilizing or planning to utilize the groundwater. Courtland has not disputed these facts, and we conclude therefore that the court's findings were not clearly erroneous. And it follows that the court did not abuse its discretion in denying injunctive relief.

Finally, with respect to the nuisance claims, the court held that the Filmont site is not a public nuisance per se under West Virginia law and concluded that Courtland had failed to provide evidence of harm to the general public in need of abatement. Again, we agree.

In short, we affirm the district court across the board on Courtland II.

### III

In the third action, Courtland III, Courtland alleged that Union Carbide discharged pollutants from its Filmont site into drainage ditches at the north end of the Filmont/Massey Property that empty into creeks and ultimately navigable waters, in violation of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342.

11

The district court dismissed the action, however, finding that Courtland lacked standing to bring the claim.  It found that any discharge into the drainage ditches at the north end of Union Carbide's Filmont/Massey Property could never reach the Courtland Property because the ditches were downstream from the Courtland Property and Courtland could not demonstrate that water flowed uphill to reach its property.  Moreover, the court held that Courtland had not demonstrated that it had a sufficient environmental interest in the area of the alleged discharge.

On appeal, Courtland contends that the district court erred, arguing that it had a broader environmental interest in the area, which gave it standing.  But we note, as the district court found, Courtland provided no evidence of its broader interest as argued.  As the court explained, the plaintiff would have to show that Union Carbide's discharges directly impacted a concrete interest or had prevented specific activities in the affected area.  *See Friends of the Earth v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 183–84 (2000); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 156–61 (4th Cir. 2000).

IV

Finally in Courtland IV, Courtland alleged that Union Carbide discharged pollutants from its Filmont/Massey Property into a drainage ditch at the south end of its property, which is contiguous to the Courtland Property.  Courtland alleged that the discharges were made with groundwater, surface water, and stormwater, in violation of the Clean Water Act.

12

The district court dismissed Courtland's claims that Union Carbide discharged pollution through groundwater and surface water, finding as fact that, given the "historical and current uses of the Courtland Property," Courtland "very probably polluted" its own groundwater and was "at least as likely" as Union Carbide to have been the source of the surface water pollutants. The court, however, found that Courtland did prove three discharges of polluted stormwater without a permit, in violation of the Clean Water Act. Courtland presented evidence during the Phase I trial that stormwater was discharged from the Filmont/Massey Property into the ditch three times without a permit. During the Phase II trial, however, Courtland sought to introduce rainwater records to prove a wider range of violations. The court rejected Courtland's effort, explaining that Courtland should not be given a second chance during the Phase II trial for proving liability, as that Phase was conducted solely to determine remedies. Accordingly, the court considered only the three discharges that Courtland proved during Phase I, and with respect to those discharges, the court imposed the maximum civil penalty on Union Carbide under the Clean Water Act, totaling $200,136.

On appeal, Courtland contends that the civil penalty should have been for *every day* that Union Carbide *did not have a permit* to discharge stormwater instead of for every day that there was *an actual discharge*. Courtland's argument, however, would allow for a civil penalty on days that there was no discharge, contrary to the Act's language. *See* 33 U.S.C. §§ 1311(a), 1342(a)(1). The district court thus correctly read the statute to provide for civil penalties for every unpermitted *discharge*, not for *every day* that Union Carbide did not have a permit. *See id.*

13

Courtland also challenged the district court's discretion in rejecting Courtland's effort to provide evidence of more discharges during Phase II. In the circumstances where the court established a comprehensive procedural course for disposing of all of Courtland's claims in an orderly manner, we cannot conclude that the court abused its discretion in how it managed the cases. Neither party objected to the court's decision to try the cases in two phases.

\*      \*      \*

At bottom, in disposing of these four actions, the district court conducted two trials for a total of 21 days and made findings of fact and conclusions of law in memoranda covering some 495 pages. The court was thorough and detailed, rational, and patient, and we find no challenged factual finding to be clearly erroneous. Nor do we conclude that the court erred in making any challenged legal conclusion. Accordingly, we affirm the judgments of the district court.

AFFIRMED

14